NOT RECOMMENDED FOR PUBLICATION
File Name: 25a0015n.06

No. 24-5375

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

<table>
<tr><td>NEW ALBANY MAIN STREET PROPERTIES, dba Port of Louisville,</td><td>)<br>)<br>)</td><td rowspan="5"><strong>FILED</strong><br>Jan 14, 2025<br>KELLY L. STEPHENS, Clerk</td></tr>
</table>

NEW ALBANY MAIN STREET PROPERTIES, dba Port of Louisville,

 Plaintiff-Appellee,

v.

WATCO COMPANIES, LLC,

 Defendant,

MARIA BOUVETTE,

 Defendant-Appellant.

)
)
)
)
)
)
)
)
)
)
)
)
)
)

**FILED**
Jan 14, 2025
KELLY L. STEPHENS, Clerk

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF KENTUCKY

OPINION

---

Before: SUTTON, Chief Judge; LARSEN and MURPHY, Circuit Judges.

MURPHY, Circuit Judge. This case reaches us a second time at its very outset—perhaps showing why the final-judgment rule usually bars early appeals in non-final cases. New Albany Main Street Properties (which does business as "Port of Louisville") brought state-law claims against Maria Bouvette, the executive director of the Louisville and Jefferson County Riverport Authority. In the first appeal, we held that Kentucky law would grant Bouvette governmental immunity from these state-law claims because Port of Louisville sued her in her *official* capacity. On remand, the district court allowed Port of Louisville to amend its complaint to sue Bouvette in her *personal* capacity. It also held that the new complaint pleaded facts that rebutted Bouvette's qualified-immunity defense. Bouvette again appeals from the denial of her motion to dismiss.

But we lack jurisdiction over her claim that the district court should not have allowed Port of Louisville to amend its complaint. That complaint also alleges facts that (if true) would show that Bouvette acted in bad faith and cannot seek qualified immunity. We thus affirm in part and dismiss in part.

I

The Louisville and Jefferson County Riverport Authority (or Authority, for short) owns a large port facility on the Ohio River in Louisville, Kentucky. Am. Compl., R.79, PageID 611. After a public-bidding process in 2009, the Authority contracted with Port of Louisville to operate the facility. *Id.* The parties later entered into an amended lease agreement that could have kept Port of Louisville in charge of the port facility until 2035. *Id.*, PageID 612. Port of Louisville claims that it competently managed the facility over the next decade. *Id.*

In late 2018, however, Bouvette allegedly "began secret negotiations" to replace Port of Louisville with one of its competitors, Watco Companies. *Id.* Yet Bouvette and Watco hit a snag: the Authority's contract with Port of Louisville did not allow it to end their relationship at will. Bouvette and Watco thus allegedly conspired over how to terminate the contract for cause. *Id.*, PageID 613. Among other things, the Authority hired an inspector who issued a report full of "false findings" that the port facility was "mismanaged, unsafe, and in disrepair." *Id.*

In 2019, the Authority sued Port of Louisville in state court on the ground that the company had breached the parties' amended lease agreement. *Id.*, PageID 614. The Authority also brought separate eviction suits against the company. *Id.* The Authority and Port of Louisville eventually arbitrated their claims. *Id.*, PageID 615. The arbitrator found that the parties had an enforceable agreement and that Port of Louisville had not breached it. *Id.* He continues to oversee Port of Louisville's counterclaims against the Authority. *Id.*, PageID 615–16.

In the meantime, Port of Louisville brought this separate suit against Bouvette and Watco. The company alleged that these actors were interfering with its "existing and prospective contracts and business relationships" with port-facility customers. *Id.*, PageID 616. As one example, Port of Louisville claimed that Bouvette had schemed to lower the prices Port of Louisville could charge a customer that owned a neighboring scrapyard and that shipped stainless steel from the port facility. *Id.* As another example, Port of Louisville claimed that Bouvette wrongly told other customers not to do business with the company because it had breached its contract with the Authority and would be evicted from the port facility. *Id.*, PageID 617.

Port of Louisville asserted tortious-interference, civil-conspiracy, and defamation claims against Bouvette and Watco. *Id.*, PageID 618–21. Bouvette moved to dismiss these claims on the ground that Kentucky law granted her sovereign immunity. The district court denied her motion. *See New Albany Main St. Props. v. Watco Cos.*, 75 F.4th 615, 621–22 (6th Cir. 2023). We reversed. *See id.* at 632. Because Port of Louisville had sued Bouvette in her official capacity, she could invoke the "governmental" form of Kentucky's sovereign immunity against the three state-law claims. *See id.* at 623–32.

On remand, Port of Louisville moved to amend its complaint to pursue the same claims against Bouvette in her personal capacity. Over Bouvette's objection, the district court allowed the company to file a new complaint. Bouvette next moved to dismiss the amended complaint on the ground that Kentucky law would grant her qualified immunity for damages claims against her in her personal capacity. The district court denied this motion too.

II

Bouvette has appealed again from the district court's denial of her motion to dismiss. She argues that the district court should not have permitted Port of Louisville to amend its complaint and should have granted her qualified immunity. We will consider each argument in turn.

A

Bouvette first asserts that the district court should have denied Port of Louisville's motion to amend its complaint. In our earlier decision, we left "it for the district court on remand to decide whether Port of Louisville may amend its complaint to add an individual-capacity claim." *New Albany*, 75 F.4th at 632. Port of Louisville thus sought to add such a claim back in the district court. Bouvette responded by arguing that Port of Louisville had forfeited its ability to raise a personal-capacity claim at this time. But the district court allowed Port of Louisville to file an amended complaint. So Bouvette now renews her forfeiture argument on appeal. Her argument is premature: We lack jurisdiction to consider it at this stage.

Circuit courts typically have jurisdiction to review only "final decisions" from district courts. 28 U.S.C. § 1291. The Supreme Court, though, has read the word "final" in a pragmatic way. *See Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 106 (2009). We may review a non-final district-court decision if it conclusively resolves an issue "distinct from the merits of the plaintiff's claims" and if we could not effectively review that issue at the case's end. *Chaney-Snell v. Young*, 98 F.4th 699, 708 (6th Cir. 2024). Under this "collateral-order doctrine," state actors may appeal an order denying them qualified immunity when a plaintiff has sued them under 42 U.S.C. § 1983. *See Mitchell v. Forsyth*, 472 U.S. 511, 524–30 (1985). Here, by contrast, Bouvette concedes that the order granting Port of Louisville's motion to amend the complaint does

4

not qualify as "final" even under the Supreme Court's collateral-order doctrine. We thus need not consider the point.

Bouvette instead relies on "what we have dubbed 'pendent appellate jurisdiction'" to seek our review of the order allowing Port of Louisville to amend its complaint. *Chaney-Snell*, 98 F.4th at 709. This doctrine gives us jurisdiction over an otherwise unappealable issue if it has a close enough connection to an appealable one. *See id.* We have found the required connection in two situations. *See id.* First, we have allowed an appellant to pursue an appeal of an unappealable issue if it was "inextricably intertwined" with an appealable one. *Id.* (citation omitted). Yet an appellant can satisfy this "inextricably intertwined" test only if our resolution of the appealable issue automatically resolves the unappealable issue too. *See id.* (citation omitted). Second, we have allowed an appellant to seek our review of an unappealable issue when we must consider that issue to allow for "meaningful review" of the appealable issue. *Id.* (citation omitted).

Bouvette can meet neither theory. To begin with, a conclusion that she is (or is not) entitled to qualified immunity "says nothing" about whether the district court properly allowed Port of Louisville to amend its complaint. *Id.* at 710. Next, "we can give 'meaningful review'" to the district court's qualified-immunity ruling without considering its earlier order allowing Port of Louisville to amend its complaint. *Id.* (citation omitted). The legal principles governing qualified immunity do not incorporate (or otherwise depend on) the rules for amending complaints. *See id.*

In response, Bouvette argues that the district court's decision on the motion to amend is "inextricably intertwined" with the qualified-immunity issue. Reply Br. 2. She reasons that the qualified-immunity issue would become moot if we accepted her forfeiture argument and held that the district court should have barred Port of Louisville from pursuing a personal-capacity claim. Yet our precedent has read this "inextricably intertwined" test to apply only if our resolution of

the appealable issue "*necessarily* resolve[s]" the unappealable one. *Chaney-Snell*, 98 F.4th at 710 (quoting *Hopper v. Plummer*, 887 F.3d 744, 760–61 (6th Cir. 2018)); *Williams v. Maurer*, 9 F.4th 416, 429 (6th Cir. 2021). And Bouvette's motion-to-amend arguments do not rise or fall with her qualified-immunity arguments in this way. *See Ward v. Moore*, 414 F.3d 968, 972 (8th Cir. 2005).

Bouvette's cited cases do not change things. The Supreme Court has long held that we may review the merits of a plaintiff's constitutional claims under § 1983 when deciding whether the district court correctly denied qualified immunity for those claims. *See Ashcroft v. Iqbal*, 556 U.S. 662, 671–73 (2009); *Wilkie v. Robbins*, 551 U.S. 537, 549 n.4 (2007); *Hartman v. Moore*, 547 U.S. 250, 257 n.5 (2006). But qualified immunity's legal test incorporates the constitutional merits because it asks whether the law governing a constitutional claim was "clearly established at the time" the defendant acted. *District of Columbia v. Wesby*, 583 U.S. 48, 63 (2018) (citation omitted). So a court cannot grant "meaningful review" to a qualified-immunity defense without delving into the merits. *Chaney-Snell*, 98 F.4th at 710 (citation omitted). That logic does not extend to Bouvette's claim that the district court wrongly allowed Port of Louisville to amend its complaint. The test for qualified immunity in no way depends on the legal rules for amending complaints. We thus lack jurisdiction over this issue. *See Ward*, 414 F.3d at 972.

B

That said, all parties agree that the collateral-order doctrine gives us jurisdiction over Bouvette's qualified-immunity defense to the state-law claims. *See Browning v. Edmonson County*, 18 F.4th 516, 529 (6th Cir. 2021); *see also New Albany*, 75 F.4th at 622. Like qualified immunity under § 1983, qualified immunity under Kentucky law counts as an immunity from suit rather than a defense to liability. *See Martin v. Wallace*, 651 S.W.3d 753, 758 (Ky. 2022); *Breathitt Cnty. Bd. of Educ. v. Prater*, 292 S.W.3d 883, 886–87 (Ky. 2009); *cf. Mitchell*, 472 U.S. at 524–

27. So government actors would effectively lose this immunity if they had to wait until the end of the litigation to appeal its denial.

Kentucky courts grant state officials qualified immunity from damages claims if their conduct meets three criteria. *See Yanero v. Davis*, 65 S.W.3d 510, 522 (Ky. 2001). Qualified immunity applies only to actions that are "discretionary" rather than ministerial. *Id.* It applies only to actions that a government actor takes in "good faith" rather than bad faith. *Id.* And it applies only to actions that fall "within the scope of" the government actor's "authority." *Id.*

Port of Louisville does not dispute that Bouvette's actions satisfy the first and third of these criteria. So this case asks whether Bouvette acted in bad faith. Under Kentucky law, a plaintiff can establish that a state actor did not act in good faith using either an objective approach or a subjective one. *See Browning*, 18 F.4th at 530; *Clemons v. Couch*, 768 F. App'x 432, 439 (6th Cir. 2019). Objectively, state actors cannot invoke qualified immunity if their conduct violated a "clearly established" state-law right (a test that largely mirrors the federal approach to qualified immunity). *See Yanero*, 65 S.W.3d at 523; *cf. Browning*, 18 F.4th at 530–31. Subjectively, state actors cannot invoke qualified immunity if they took the challenged conduct with a malicious or corrupt intent to harm the plaintiff—not for a valid governmental purpose. *See Yanero*, 65 S.W.3d at 523; *see also Martin v. O'Daniel*, 507 S.W.3d 1, 5–6 (Ky. 2016).

Port of Louisville's complaint has pleaded enough facts to plausibly suggest that Bouvette acted in bad faith under the subjective approach. *See Iqbal*, 556 U.S. at 678–79. According to the complaint, Bouvette and Watco engineered a "plan" to replace Port of Louisville at the port facility by claiming that this company had breached its lease agreement with the Authority. Am. Compl., R.79, PageID 614. Yet this claim was knowingly false. As an arbitrator found, Port of Louisville had not breached its agreement with the Authority. *Id.*, PageID 615. Bouvette also maliciously

told several customers that Port of Louisville had violated the agreement to persuade them to stop working with the company and to harm its business. *Id.*, PageID 616–17; *see Yanero*, 65 S.W.3d at 523. She also intentionally lowered the price that Port of Louisville could charge the nearby scrapyard owner to further harm Port of Louisville's business. Am. Compl., R.79, PageID 616. Given that we must accept these facts as true, *see Iqbal*, 556 U.S. at 678, they suffice to overcome Bouvette's qualified immunity at the pleading stage.

In response, Bouvette identifies good-faith reasons for her actions. She, for example, claims that she started to negotiate with Watco because of a legitimate "contract dispute" with Port of Louisville. Appellant's Br. 41. And rather than lie to Port of Louisville's customers, she claims that she merely passed along "factual communications regarding the ongoing legal disputes between" the Authority and Port of Louisville. *Id.* at 42. Similarly, she claims that she lowered the shipping price for the scrapyard owner because "market conditions" required her to take this action to keep this customer at the port facility. *Id.* These defenses may well work down the road. But they do not suffice at this stage because we must "assume [the] veracity" of Port of Louisville's competing factual allegations. *Iqbal*, 556 U.S. at 679.

At the least, Bouvette lastly argues, Port of Louisville cannot seek injunctive relief against her. She points to outside-the-complaint evidence allegedly showing that she has now left her job as the Authority's executive director. But Bouvette has not connected this claim to the qualified-immunity defense that allows her to immediately appeal. That defense generally "affords protection from *damages* liability," not injunctive relief. *Yanero*, 65 S.W.3d at 522 (emphasis added); *see also Pearson v. Callahan*, 555 U.S. 223, 242–43 (2009). And Bouvette has not explained why we otherwise have jurisdiction to review the district court's decision to allow the

claim for injunctive relief to proceed.  She has thus forfeited any such theories.  *See Resurrection Sch. v. Hertel*, 35 F.4th 524, 530 (6th Cir. 2022) (en banc).

We affirm in part and dismiss in part for lack of jurisdiction.